391 P.2d 911

In the Matter of a Member of the State Bar of Arizona, Robert R. STEWARD, Respondent.

No. 8047.

Supreme Court of Arizona,

En Banc.

April 24, 1964.

Rehearing Denied June 2, 1964.

Ralph J. Lester, Phoenix, for the State Bar of Arizona.

Harry A. Stewart, Jr., John P. Frank, and John J. Flynn, Phoenix, for respondent.

UDALL, Chief Justice.

This is a disbarment proceeding. A complaint against Robert R. Steward, of Phoenix, Arizona, accusing him of unprofessional conduct as a member of the Bar of this State was filed with the Local Administrative Committee, for District No. Four, of the State Bar.

This complaint was heard by the Administrative Committee. Respondent was present, represented by counsel, testified and offered evidence; the proceedings were reported by a reporter and a transcript of his notes is a part of the files. A majority of the Committee found respondent guilty of deceitful conduct towards clients, a lack of understanding of professional standards, and misappropriation of funds. The Committee recommended reprimand and disbarment. Respondent petitioned for resignation from the State Bar. A complete record of these proceedings, together with the Committee's recommendation, was lodged with the Board of Governors of the State Bar, as required by Rule 35 of the Rules of the Supreme Court, 17 A.R.S., and the Board of Governors took additional evidence with regard to respondent's mental condition and, following respondent's petition to resign from the State Bar, sent the complete record to this Court with a recommendation that the resignation be accepted. The findings and recommendations of the Committee are as follows:

"COUNT ONE

*"Findings:*

"In 1957 attorney Robert R. Steward, hereinafter referred to as 'Respondent', was engaged as an attorney by one Edward S. Young to prosecute a claim for damages for the wrongful death of his mother, Louise Young, who died from injuries received in an automobile collision on August 27, 1957, in Phoenix, Arizona. Pursuant thereto, Respondent prepared a complaint which was presented to and signed by Edward S. Young on February 20, 1958 and filed by the Respondent on February 20, 1959 in the Superior Court of the State of Arizona in and

for the County of Maricopa, Cause No. 105645, entitled "Edward S. Young, as Administrator of the Estate of Louise Young v. Doug Clark, Jr., Doug Clark, Sr., and Jane Doe Clark, wife."

"Summons was issued in said action but the same was never served upon any of the defendants, and no court proceedings of any kind were ever had with respect thereto. In response to numerous inquiries made by Mr. Young to the Respondent regarding the status and disposition of said suit, Respondent misrepresented to Mr. Young that certain court proceedings were had in the matter and that the case had been set on more than one occasion but had to be postponed.

"Some time in 1960 Respondent misrepresented to Mr. Young that he had been in contact with the defendants' liability insurer and that liability had been declined on the grounds of lack of coverage under the insured's policy, and Respondent advised that consequently any settlement that might be achieved would have to be done so with the defendant Doug Clark, personally. The Respondent obtained Young's consent to negotiate a settlement with Doug Clark personally, pursuant to which Respondent misrepresented to Mr. Young that he had in fact negotiated a settlement with Doug Clark whereby the latter would pay $10,000 as follows: $5,000 to Young, $2,500 to Respondent for his services, and $2,500 to Young in monthly installments of $100, commencing August 8, 1960.

"None of the foregoing representations were true; neither Doug Clark nor his insurance carrier had agreed to make any settlement or ever had any negotiations with the Respondent regarding a settlement.

"Pursuant to the settlement agreement fabricated by the Respondent, the Respondent gave Mr. Young his personal check for $5,000, which was not honored at the bank on account of insufficient funds. Subsequently, however, Respondent gave Mr. Young a cashier's check for $5,000, whereupon Respondent misrepresented that he had received $2,500 from the defendant Doug Clark, which satisfied Respondent's fee.

"After several of the above-mentioned monthly installments of $100 became overdue, Respondent promised Mr. Young to pay him by check for the arrearage. After several weeks had passed without receiving a check from the Respondent, Mr. Young called on Respondent personally. At this meeting the Respondent at first tendered $300 in cash to Mr. Young but withdrew same and forcibly

ejected Mr. Young from the office upon being informed by Mr. Young that he had become curious and checked the court's records in this matter and had also consulted the State Bar Association regarding Respondent's handling of the case.

"The Committee finds that Respondent's conduct towards his client, Edward S. Young, was deceitful.

"*Recommendation:*

"That Respondent be disbarred."

## "COUNT TWO

"*Findings:*

"On January 26, 1960 attorney Richard W. Shettle of Hartford, Connecticut, forwarded a matter to Respondent for handling on behalf of attorney Shettle's client. Receiving no reply from Respondent, attorney Shettle wrote again to Respondent on February 24, March 17, and May 2, 1960, and still received no reply. A final letter was sent by registered mail to Respondent by attorney Shettle on May 17, 1960, requesting the return of the papers and file originally forwarded, again without any acknowledgment from Respondent.

"On June 22, 1960, attorney Shettle complained of the foregoing to the State Bar Association of Arizona. On September 2, 1960 attorney Ralph J. Lester, acting on behalf of this Committee, wrote to Respondent regarding said complaint, without receiving any response.

"The Committee finds Respondent's failure to answer referring attorney's letters and this Committee's attorney's inquiry to be careless and unprofessional; the Committee further finds that Respondent's failure to recognize his omissions in this matter, as evidenced by his testimony at the Committee's hearing, demonstrates a lack of understanding or appreciation of professional standards.

"*Recommendation:*

"That Respondent be reprimanded."

## "COUNT THREE

"*Findings:*

"In 1959, Respondent was engaged to draw up the necessary legal documents for the formation of a new corporation, the Motorist League of Arizona. Thereafter a check dated September 16, 1959 in the amount of $10,000 drawn by Joseph L. Allen, one of the incorporators, payable to the order of the law firm of Hughes and Steward, was delivered to Respondent for the purpose of obtaining a group travel and pedestrian insurance policy for Motorist League of Arizona, to be issued by the Continental Casualty Insurance Company.

"Respondent cashed said check and employed the funds for his own personal use and has not accounted for the proceeds.

*"Recommendation:*

"That Respondent be disbarred."

## *"COUNT FOUR*

*"Findings:*

"On July 28, 1958, Mark H. Wall and Respondent organized the Globe Land Development Company, Inc., an Arizona corporation. On said date Wall delivered to Respondent his personal check payable to Respondent in the sum of $10,000, which was endorsed and cashed by the Respondent. At said time and prior thereto Respondent was acting for Wall as his legal counsel with respect to this and other matters.

"Prior to the organization of said corporation and prior to the delivery of said check, Respondent, for the purpose of inducing said delivery, represented to Wall that he would transfer and convey to said corporation (of which Wall was a stockholder) certain real property and apartment buildings at 1709 North 24th Place, Phoenix, Arizona.

"Despite repeated demands by Wall, Respondent failed and refused to convey said property to the corporation although he was the owner thereof, and in fact Respondent thereafter caused certain encumbrances to be placed upon said property, for example, on December 2, 1958, he placed a mortgage of $28,125. On numerous occasions Wall also demanded repayment of the $10,000 from Respondent, without avail.

"In April of 1959, Wall filed suit for fraud against Respondent to recover the $10,000 and an additional $10,000 as punitive damages in Superior Court, Maricopa County, Cause No. 107393. Simultaneously Respondent paid to Wall the sum of $5,000, whereupon Wall's Complaint was amended accordingly, seeking $5,000 compensatory damages and $10,000 punitive damages.

"Respondent did not file an answer to said Complaint, and in due course Wall obtained a default judgment against Respondent for $5,000 compensatory damages and $5,000 punitive damages.

"The Committee finds Respondent's conduct with respect to the foregoing to have been deceitful.

*"Recommendation:*

"That Respondent be disbarred."

## *"COUNT FIVE*

*"Findings:*

"On July 10, 1960, Richard M. Doukakis entered into an agreement with Respondent to purchase certain real property in Scottsdale, Arizona.

Pursuant to such agreement, on July 11, 1960, Doukakis gave Respondent a check in the amount of $2,500 and on July 12, 1960 a check in the amount of $5,000. Respondent has since failed to perform under said contract or account for the above monies received.

"The Committee finds that Respondent's dealings with Richard M. Doukakis in connection with the foregoing were deceitful.

*"Recommendation:*

"That Respondent be disbarred."

The Board of Governors of the Bar filed its recommendations with this Court on August 23, 1963. Respondent was notified of this action but has not requested to be allowed to file briefs or make oral argument. Rule 37 Rules of the Supreme Court states:

"Rule 37. Proceedings Before Court; Brief and Oral Argument; Decision

"If the respondent desires to file briefs and make oral arguments on the record as to why the recommendations of the board should not be adopted, he shall file with the clerk of this court his request therefor within twenty days after the mailing of such notice. Following the filing of such request, this court shall fix a time for the filing of briefs by respondent and the examiner and for argument. Following the date fixed for such argument, or twenty days after the mailing of such notice if no request has been filed by respondent, this court shall consider the recommendations and the record and render its decision."

■ The recommendation of the Board that the respondent's resignation be accepted was based on a finding of fact that

"3. The Board of Governors finds that, based upon the evidence presented before it, there is a question as to whether or not the Respondent was mentally incompetent at the time of the acts complained of to the extent that he would be legally responsible for such acts; * * *"

The finding of the Board was based on the testimony of one psychiatrist who examined and treated the respondent a number of years after the incidents involved. In none of his testimony was there any direct testimony that respondent's emotional condition was the cause of the acts with which he was charged. At one point the doctor testified:

"Q BY MR. LESTER: Now, doctor, is it your testimony that Mr. Steward entered an acute phase of schizophrenia following this accident of 1959?

"A Well, I can't really say this because I didn't know him before, but what we say after the accident, what I

heard after the accident and what I saw when I first examined him, this was a rather acute condition. *How long before he had been sick I really couldn't testify.*

"Q Well, on the basis of information available to you, is it your opinion that the onset of this acute phase occurred following the automobile accident of 1959?

"A It could have been. I can't —*I can't answer that with certainty* because, as I say, I didn't know him before.

* * *." (Emphasis supplied.)

The equivocal testimony of the doctor neither proves nor disproves the respondent's mental condition at the time of the transactions recited herein.

We have read the transcript of the testimony before the Board and are of the opinion that it does not support a finding that respondent was mentally incompetent at the time of the acts complained of. Consequently we do not accept the recommendation of the Board that respondent be allowed to resign from the State Bar.

We have carefully considered the record and the findings of fact. The conduct of respondent here is unconscionable, as we said in In re Graham, 58 Ariz. 192, 202, 203, 118 P.2d 1093, 1097:

"To refuse to return the $330.65 to the admitted owner but instead appropriate it to one's own use does, as the administrative committee found, constitute professional misconduct and calls for disbarment of the person guilty thereof." The respondent is hereby disbarred.

LOCKWOOD, V. C. J., and STRUCKMEYER, BERNSTEIN and JENNINGS, JJ., concur.