621 P.2d 292

Robert D. HOWARD, doing business as Howard Realty, Plaintiff-Appellant,

v.

Richard B. NICHOLLS, State Real Estate Commissioner of the State of Arizona, Defendant-Appellee.

No. 1 CA–CIV 4680.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 16, 1980.

Rehearing Denied Nov. 19, 1980.

Review Denied Dec. 16, 1980.

## OPINION

HAIRE, Presiding Judge.

On this appeal by the appellant real estate broker from a superior court decision affirming the revocation of his broker's license by the appellee Real Estate Commissioner, issues are raised (1) concerning the sufficiency of the evidence to support the revocation, and (2) questioning the propriety of the consideration by the appellee of evidence relating to appellant's participation in bogus land contract transactions occurring in 1971 or early 1972, more than five years prior to the initiation of the revocation proceedings.

At the time of the hearing before the Real Estate Department's hearing officer, the remaining charges against appellant consisted of alleged violations of A.R.S. §§ 32–2153 A(16)[1] and 32–2153 B(4)[2]. Additional allegations relating to the violation of §§ 32–2153 A(1) and 32–2153 A(5) were dismissed prior to the presentation of evidence at the hearing.

In support of the alleged violation of § 32–2153 A(16), appellee presented evidence showing that on April 18, 1977, pursuant to a plea agreement, appellant had been found guilty in the United States District Court of the crime, misleading sales of securities, a misdemeanor, and was fined in the amount of $5,000. It was appellee's contention that this crime constituted a "crime of moral turpitude" so as to bring such conviction within the purview of § 32–2153 A(16).

The 1977 federal charge against appellant arose out of his participation in 1971 and

Duecy, Moore, Robinson & Bennett by William F. Bennett, Scottsdale, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Thomas I. McClory, Asst. Atty. Gen., Phoenix, for defendant-appellee.

1. A.R.S. § 32–2153 A(16) provides as follows:

   "A. The commissioner may suspend, revoke or deny the renewal or the right of renewal of a license issued under the provisions of this chapter when it appears that the holder thereof, while a licensee under this chapter, within five years immediately preceding, in the performance of or attempt to perform any acts authorized by such license or by this chapter, has:

   \* \* \* \* \* \*

   "16. Been convicted in a court of competent jurisdiction in this or any other state or for-gery, theft, theft by extortion, extortion, con-spiracy to defraud, a crime of moral turpitude, or other like offense or offenses."

2. A.R.S. § 32–2153 B(4) reads as follows:

   "B. The commissioner may suspend or revoke a license, deny the issuance of a license or deny the renewal or the right of renewal of a license issued under the provisions of this chapter when it appears that the holder or applicant therefor, has:

   \* \* \* \* \* \*

   "4. Not shown that he is a person of honesty, truthfulness and good reputation."

early 1972 in certain bogus land contract transactions. The hearing officer's findings of fact and conclusions of law were as follows:

### "FINDINGS OF FACT

"On April 18, 1977, Respondent Robert D. Howard was, on his plea of guilty, convicted of the offense of violating Title 15, USC Section 78j(b); 78(ff)(a); 17 C.F.R. Section 240.10(b)(5) the crime being 'misleading sale of securities' (Exhibit 1), and was fined in the amount of $5,000. Respondent admitted under oath at this hearing that he had procured signatures on 5 or 6 bogus land sales contracts at the request of his friend, Jacob Hood, who told Respondent he needed the documents to 'temporarily' deceive the Board of Directors of Western Land Sales Company, since (as President of that firm) Hood was under pressure from his board due to slow sales. Rather than destroying the contracts as he had pledged to Respondent he would do, Hood caused them to be sold to others, including one or more out-of-state buyers. Respondent further testified that he received no compensation for procuring the fraudulent documents, that he did not at the time realize his actions were contrary to the law and that, with respect to one of the contracts, he made payments on a lot covered by it to avoid injury to a third party purchaser. There was no proof offered as to the nature and extent of damages suffered by any of the parties to these transactions.

### "CONCLUSIONS OF LAW

"Based on the foregoing Findings, the following Conclusions of Law are reached:

"1. The conduct of Robert D. Howard as recited in the Findings of Fact is in violation of A.R.S. 32-2153 A.16.

"2. In connection therewith, Respondent has not complied with the requirements of A.R.S. 32-2153 B.4.

"3. Such circumstances constitute grounds for suspension or revocation of Robert D. Howard's Broker's license."

Based upon these findings and conclusions, he entered the following recommendations:

### "RECOMMENDATIONS

"Mr. Howard has been a real estate broker in this state for close to 18 years, which fact alone could lead those dealing with Respondent to regard him as a person possessed of substantial ethical standards and a degree of experience and competence to match his many years in his profession. Yet Mr. Howard wilfully generated a number of contracts purporting to be legitimate land sales agreements with buyers who didn't exist, knowing they would be used as valid and legally binding documents of substantial value by a friend in order to deceive the directors of the friend's company. Mr. Howard now urges that he did not know it was wrong to do so. Such conduct and attitude is in flagrant conflict with the standards required of persons licensed in this profession and a continuation of that circumstance represents a potentially serious threat to the clients of Respondent in particular and the public in general. Accordingly it is recommended that the Real Estate Broker's license of Robert D. Howard be revoked."

The federal information against appellant specifically charged him with "misleading sale of securities in connection with the transfer of real property", in violation of Title 15, United States Code § 78ff(a); 17 C.F.R. § 240.10(b)(5). This charge involved only one of the bogus land contract transactions, and the allegation was that appellant:

"... did use a means and instrumentality of interstate commerce and of the mails to send a payment check for eighty-four dollars and fifty-two cents ($84.52), and in sending the check did omit to state that the check did not come from Pellegrino and that the contract assigned was one which the defendant had created by having Pellegrino merely sign his name knowing that he was not obligated to make any payments on the contract...."

It is apparent from the hearing officer's recommendations that he relied much more heavily upon the background facts relating to the 1971–72 bogus land contract transactions than he did upon the specific facts alleged in the misdemeanor charge to which appellant plead guilty.[3] Because of this heavy reliance by the hearing officer, appellant in his arguments presented in this court has been forced to take somewhat inconsistent positions concerning the propriety of the admission into evidence of such background facts and the right of the hearing officer to rely thereon in making his recommendation of revocation.

At the base of appellant's arguments against the consideration of such acts by the hearing officer is the fact that these acts all occurred more than five years prior to the initiation of these proceedings, and thus were beyond the express five year limitation provision set forth in subsection A of A.R.S. § 32–2153. Therefore, appellant's argument continues, the hearing officer should not have considered these facts in making a recommendation relating to the alleged violation of § 32–2153 A(16). As we have previously indicated, there is some inconsistency in appellant's position in this regard. First, we note that in his answer to the complaint, it is appellant himself who, by specific averment, brought before the hearing officer the fact that the federal court order found that appellant:

"signed or procured signatures on real estate contracts and gave them to Jacob Hood to deceive Hood's Board of Directors...."

Likewise, in his opening statement before the hearing officer, appellant's counsel stated:

"our defense will be to go into the facts resulting in [appellant's] conviction of a misdemeanor in April of this year; to explain that the designation of the crime is certainly much more serious than [appellant's] involvement in that."

In his opening brief filed in this court, he argues that in determining whether the federal conviction involved "moral turpitude" so as to come within the provisions of § 32–2153 A(16), the hearing officer could not look solely to the name of the crime, but rather must look to the actual supporting facts involving appellant's participation, which was limited to the procuring of the bogus land contracts without knowledge that these contracts would be subsequently sold to other parties.

█ Under these circumstances, we hold that the hearing officer was not precluded by the five year limitation provisions in § 32–2153 A from considering the background facts involving the bogus land contracts in assessing the severity of the sanction to be imposed as a result of appellant's conviction. Not only were these facts introduced without any objection, but, in addition, appellant affirmatively urged their materiality insofar as concerns the determination by the hearing officer as to whether his conduct and the resulting conviction involved moral turpitude. How these facts could be material on the issue of assessing the moral turpitude involved in defendant's conviction, and yet not be material in assessing the sanction to be imposed as a result of that conviction, escapes this court.

█ Aside from the foregoing, we also hold that the facts relating to the appellant's participation in the bogus land contract transactions were admissible and could be considered by the hearing officer pursuant to § 32–2153 B(4). The grounds for suspension or revocation set forth in subsection B are not subject to the five year limitations specified in subsection A, and in our opinion may be raised at any time by the commissioner. In this connection, we reject appellant's contention that § 32–2153 B(4) comes into play only when the commissioner is considering an initial application or an application for renewal of an existing license. The language used in subsection B would indicate a contrary intent, and it

---

3. Appellant's plea was in the nature of an "Alford" plea, and the only participation which he freely acknowledged was as set forth in the findings of fact by the hearing officer. See North Carolina v. Alford, 400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970).

would be illogical to construe § 32–2153 B(4) as being unavailable to enable a revocation or suspension by the commissioner at any time that acts indicating untruthfulness or dishonesty might first come to the commissioner's attention.

Having concluded that the hearing officer did not improperly consider the bogus land contract transactions in arriving at his recommendations, we next consider appellant's contention that the commissioner acted arbitrarily and abused his discretion in ordering that appellant's license be revoked. In this connection we note that the statute expressly gives the commissioner authority to suspend or revoke a real estate license upon a finding of a violation of subsection A or B of § 32–2153.

▮▮▮ It cannot be seriously argued that the crime for which appellant was convicted was not a crime involving moral turpitude so as to constitute a violation of § 32–2153 A(16). The term "moral turpitude" connotes a fraudulent or dishonest intent. *Attorney Grievance Commission v. Reamer*, 281 Md. 323, 379 A.2d 171 (1977). Whether one considers solely the face of the information charging the crime, or limits his consideration to the facts of appellant's admitted participation therein, a dishonest or fraudulent intent and purpose is readily apparent. Likewise, appellant's participation in the bogus land contract transactions for the admitted purpose of deceiving Hood's Board of Directors reflects adversely upon his honesty and truthfulness so as to furnish support for a finding of a violation of § 32–2153 B(4).

▮▮▮ From a review of appellant's arguments that the commissioner has acted arbitrarily and abused his discretion, it is apparent that, in essence, these arguments constitute an attack on the sufficiency of the evidence. We have previously indicated in this decision that there was competent evidence before the commissioner from which a finding could be made that appellant was in violation of A.R.S. §§ 32–2153 A(16) and 32–2153 B(4). In reviewing an administrative agency decision on the record made before that agency pursuant to

the Administrative Review Act, this court does not weigh the evidence. Rather, we must affirm the agency's decision if there is substantial evidence in support thereof, and the action taken by the agency is within the range of permissible agency dispositions authorized by the governing statute. *Webster v. Arizona State Board of Regents*, 123 Ariz. 363, 599 P.2d 816 (App.1979). Whether this court would have imposed the same sanction is immaterial. The decision as to the penalty to be imposed is vested by A.R.S. § 32–2153 in the commissioner. Since there was substantial evidence to support his decision to revoke, and revocation was one of the permissible dispositions authorized by the statute, we cannot conclude that his action in that regard was arbitrary or constituted an abuse of discretion.

Appellant's final contention is that inasmuch as the commissioner failed to rule on appellant's motion for rehearing within ten days after the filing thereof, he lacked jurisdiction to thereafter deny it. This argument is based upon the provisions of A.C. R.R. 4–28–19 N which provides, in part, as follows:

"2. If a rehearing is granted, the Commissioner shall so state in a written order, setting a time and place therefor.

"3. If a rehearing is denied, the Commissioner shall so state in a written order not later than ten (10) days after the motion for rehearing is filed."

▮▮▮ While the language of the rule is subject to the interpretation urged by appellant, such a result is not clearly required. In the absence of clear and explicit language requiring a contrary result, we hold that the requirement that a denial of the motion for rehearing be stated "not later than ten days after the motion for rehearing is filed", is merely directory, and that the commissioner retained authority and jurisdiction to thereafter enter his order denying the motion. *See generally, In Re Estate of Appleton*, 15 Ariz.App. 490, 489 P.2d 864 (1971).

The judgment is affirmed.

JACOBSON and EUBANK, JJ., concur.