660 P.2d 454

**In the Matter of a Member of the State Bar of Arizona, Eugene Walter WINES, Respondent.**

No. SB–140–2.

State Bar No. 80–1–5A.

Supreme Court of Arizona,
En Banc.

Jan. 28, 1983.

Michael N. Harrison, Phoenix, State Bar Counsel.

Fenton J. McDonough, Scottsdale, for respondent.

FELDMAN, Justice.[*]

Respondent was admitted to the practice of law in the State of Arizona on November 10, 1964, having previously practiced in the State of Missouri. On September 30, 1981, Local Administrative Committee 5A of the State Bar of Arizona issued a complaint charging respondent with violations of the Code of Professional Responsibility as adopted by this court in Ariz.R.S.Ct. 29(a),

17A A.R.S.[1] Specifically, respondent was charged with violation of Disciplinary Rule 1–102(A)(3) and (4) and Rule 29(c). After an evidentiary hearing, the committee found that the charges were sustained by the evidence and recommended that respondent be suspended from practice for a minimum period of five years, with credit given for a period of interim suspension.

Respondent objected to the findings of fact, conclusions and recommendations of the local administrative committee, and requested a hearing before the disciplinary board pursuant to Rules 35(c)(4) and 36(b). That board unanimously approved the findings, conclusions and recommendations of the local administrative committee. Respondent then objected to the recommendations of the disciplinary board. As required by Rule 36(d), the matter was then docketed in this court for decision. This court is the ultimate trier of both fact and law in disciplinary proceedings. *In re Moore*, 110 Ariz. 312, 313, 518 P.2d 562, 563 (1974). We are also required to use our independent judgment in determining the appropriate discipline under the circumstances of each case. *See In re Steward*, 96 Ariz. 49, 55, 391 P.2d 911, 915 (1964).

## FACTS

On March 30, 1977, respondent was indicted by a federal grand jury sitting in the United States District Court for the District of Arizona and charged with violation of 26 U.S.C. § 7201 (1976) (willful attempt to evade income taxes). The indictment alleged that respondent had willfully failed to report his income for the calendar years 1970, 1971 and 1972. On December 23,

1977, after a jury trial, respondent was convicted of these charges. Since the conviction was for commission of a felony, we suspended respondent from the practice of law effective March 14, 1978 as required by Rule 29(d). Respondent appealed to the United States Court of Appeals for the Ninth Circuit. The majority of the court concluded that the government had failed to comply with the "Jencks Act" (18 U.S.C. § 3500 (1976)) and the conviction was reversed.[2]

Under Rule 29(d), we were therefore required to reinstate respondent, and did so effective July 23, 1979. The Court of Appeals for the Ninth Circuit remanded the case to the United States District Court for a new trial. Respondent and the United States Attorney then entered into a plea agreement. By the terms of this agreement, the government dismissed the original indictment and filed a new indictment alleging violation. of 26 U.S.C. § 7203 (1976), which charges willful failure to supply information relating to income taxes, a misdemeanor.[3] Respondent entered a plea of guilty to the charge and on the same day was committed to the custody of the Attorney General of the United States for imprisonment for a period of one year. Execution of the sentence was suspended and respondent was placed on unsupervised probation on the condition that he first spend three months in a work release program at a community treatment center.

■ Thus, the crime of which respondent was ultimately convicted was a misdemeanor offense. Our rules provide for automatic disbarment upon conviction of any felony (Rule 29(c)); however, in the case of a

---

1. All further references to the Rules of the Supreme Court will be in the following form: "Rule ___."

2. The prosecution failed to inform defense counsel of the existence of a tape recording of an interview between a key prosecution witness and an agent of the Internal Revenue Service.

3. Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return

required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

misdemeanor conviction, the rule provides that discipline shall be imposed only if the misdemeanor is one which involves moral turpitude.[4] Since proof of conviction is "conclusive evidence of guilt," a hearing before the local administrative committee on a charge involving conviction of a misdemeanor is limited to determining whether the crime involves moral turpitude and the discipline the committee shall recommend. *Id.*

## MORAL TURPITUDE

There is considerable debate on whether violation of the tax laws is, per se, an offense involving moral turpitude. One view is that such a conviction is an offense involving moral turpitude only when the facts and circumstances surrounding the act charged establish the presence of dishonesty, fraud, deceit or misrepresentation. *See In re Rohan,* 21 Cal.3d 195, 200, 145 Cal. Rptr. 855, 857, 578 P.2d 102, 104 (1978). The other view holds that the nature of the tax offenses described in 26 U.S.C. §§ 7201, 7202 and 7203 is such that mere conviction of such an offense is evidence of conduct involving moral turpitude and ground for disciplinary action without regard to the facts and circumstances of the particular case. *In re MacLeod,* 479 S.W.2d 443, 445 (Mo.1972). The divergent views on the question are set forth in the following annotations: *Attorneys—Tax Offense as Misconduct,* 63 A.L.R.3d 512 (1975); *Attorneys —"Moral Turpitude"—Tax Offense,* 63 A.L. R.3d 476 (1975); *Disbarment—Income Tax Conviction,* 59 A.L.R.2d 1398 (1958).

The question has not been decided in Arizona and we need not reach it in this case. The committee reviewed the transcripts of the testimony in respondent's jury trial. It heard respondent's explanations of his acts and ultimate plea of guilty to violation of § 7203. Acknowledging the view that mere conviction of a violation of § 7203 "may not, *per se,* constitute an offense in-

volving moral turpitude," the committee concluded after the evidentiary hearing that respondent's methods of maintaining records and information for tax purposes and in reporting his income for the years 1970 through 1972 had shown a pattern of violations of the statute and that, reviewed in their totality, the circumstances clearly established that respondent had committed acts which were fraudulent, deceitful and dishonest in nature and which involved knowing misrepresentation of his income. Indeed, though he did contest some of the findings in the proceedings before the disciplinary board, respondent's brief to this court does not raise an issue with regard to the propriety of any particular finding. Our independent review of the record reveals that the findings are supported by the necessary standard of clear and convincing evidence, *In re Moore, supra,* and we therefore approve and adopt the findings of the local administrative committee.

■ Thus, even assuming, without deciding, that conviction of the offense in question is not per se a conviction of an offense involving moral turpitude, we find that the acts which led to that conviction were acts involving fraud, deceit, dishonesty and misrepresentation. Therefore, the particular offense committed by this respondent was a misdemeanor involving moral turpitude. Rule 29(c) thus requires that respondent "shall be disciplined as the facts warrant."

## DISCIPLINE

The administrative committee and the disciplinary board both recommend that under the facts of this case the appropriate discipline is a suspension for five years, with credit for the 16-month period during which respondent was suspended while his first conviction was on appeal to the Ninth Circuit. Respondent argues that the recommended discipline is inappropriately severe.

We disagree with respondent's contentions. The facts of this case do not show a

---

4. The Arizona Court of Appeals has defined moral turpitude as acts which evidence "a fraudulent or dishonest intent." *Howard v. Nicholls,* 127 Ariz. 383, 388, 621 P.2d 292, 297

(App.1980). The case involved the power of the State Real Estate Commissioner to revoke the license of a real estate broker.

minor transgression. They do show that respondent "knowingly and willfully manipulated his gross income in such a manner as to avoid in substantial part the proper entry of such income for bookkeeping purposes . . . ." Local Administrative Committee 5A, Findings of Fact, Conclusions and Recommendation ¶ 12(d). Respondent was aware that his method of keeping records and his bookkeeping procedures "were inadequate" and had the effect of misrepresenting the gross income which respondent received from the practice of law, but "made no effort to improve" his bookkeeping procedures. *Id.*, at ¶ 12(e). The facts show that among the devices used by respondent to avoid reporting all of his taxable income were such practices as failing to deposit his legal fees in proper accounts and diverting fees to cash or other accounts, so that the same would not be recorded for tax reporting purposes; depositing less than the full amount of fees received, so that the amounts recorded misrepresented the actual amounts of the fees; and placing fees directly into his savings account without first depositing them to his office account, so that the receipts were not reported as income.

■ Respondent, a lawyer, must be charged with knowledge of the income reporting requirements of the federal tax laws and of the necessity of establishing adequate bookkeeping procedures to ensure that all income received was properly recorded and shown on his books for tax reporting purposes. While some taxpayers may be allowed to claim that they were unaware of the necessity of keeping proper books or were so unsophisticated that they were unable to establish proper bookkeeping procedures for their business affairs, we will not entertain the notion that a lawyer may avail himself of such an excuse. We charge lawyers with knowledge of what the law requires and place them under an affirmative duty to accomplish what is required of them. *Cf. In re Rubi,* 133 Ariz. 491, 652 P.2d 1014 (1982) (dealing with the same type of problem—"sloppy" procedures—with regard to clients' trust accounts).

■ Taken as a whole, the evidence clearly establishes that respondent knowingly and intentionally operated his office in such a manner that his gross income would not be properly recorded and, as a result, would not be properly reported in preparation of his tax returns. The law requires proper recording and proper reporting of income, and we believe that an attorney who has knowingly failed to adopt procedures which would bring him into compliance and has employed various artifices to avoid these requirements has not only violated the law but has been guilty of fraud, dishonesty and misrepresentation of such a nature as to make suspension reasonable if not absolutely necessary.

■ In addition, respondent's prior record must be considered. Under our rules, prior disciplinary action by this court may be properly considered "in recommending or imposing discipline." Rule 38(a)(4). We believe, also, that as a matter of law prior disciplinary action by any other court or bar to which the attorney had been admitted may be properly considered on the issue of determining what discipline is appropriate. We take notice of *In re Wines,* 370 S.W.2d 328 (Mo.1963). In that case, the Missouri court found that in negotiating with insurance companies on behalf of personal injury clients, this same respondent had misrepresented the amount of medical expenses, had misrepresented the existence of property damage by transmitting false receipted bills, and, in composing and transmitting resumes of medical reports, had made deletions so material that the quotes set out in the resumes constituted an "affirmative misstatement of fact." *Id.* at 335. Respondent's defense in *In re Wines* was somewhat similar to his explanation in the case at bench. He blamed the problems on poor office procedures, inefficient secretarial work and the like. The Missouri Supreme Court stated:

We feel that the extent and duration of the practices respondent thus engaged in, his rather callous attitude toward the use of "resumes" regardless of their obviously

deceptive appearances, his affirmative alteration of the history of accident in one case, the alteration of "incurred" medical expenses, and the submission (with *no* investigation at best) of an admittedly false receipted bill for car repair, impel us to go further [than admonition].

*Id.* at 336.

Thus, respondent was suspended in Missouri for a term of six months from October 1, 1963. Respondent was admitted to practice law in Arizona on November 10, 1964, after a hearing by the Committee on Examinations and Admissions on his moral character. The record also reveals that on November 21, 1972, this court censured respondent in Cause No. SB–29 for endorsing a $100 bail bond refund check without the consent of the payee and appropriating it to apply on a fee owed to him. At the hearing before the disciplinary board on April 24, 1982, respondent attempted to introduce evidence that he had the consent of the payee to make the endorsement, but the board quite properly refused to entertain a collateral attack made almost ten years after the entry of this court's order. No application for reopening on the ground of "newly discovered evidence" has been made in SB–29, and we cannot and do not consider respondent's contentions with regard to his "innocence" in that matter.

■ We conclude, therefore, that in light of the seriously dishonest nature of acts which represent a pattern of dishonest conduct similar to that which was demonstrated in the past, a five-year suspension is eminently appropriate. Respondent argues, however, that while such a suspension might be appropriate under ordinary circumstances, it is not in this case. First, respondent argues that the five-year suspension is too harsh in comparison with discipline imposed in other cases involving acts at least as egregious as those committed here. He specifically cites *In re Kleindienst*, 132 Ariz. 95, 644 P.2d 249 (1982), as an example. While the question of proportionality is appropriate, we do not intend to relitigate *Kleindienst* in this proceeding. The discipline in each situation must be tailored for the individual case; neither perfection nor absolute uniformity can be achieved. We are satisfied that the discipline recommended in this case is within the range of that imposed in other cases involving the same type of misconduct—serious, knowing violations of the tax laws. *See* Annot., *supra,* 63 A.L.R.3d § 7, at 500–07. In fact, cases involving similar acts where the attorney employed devices to prevent the recording of fees and was convicted of tax evasion (26 U.S.C. § 7201) have led to disbarment. *E.g., Maryland State Bar Association, Inc. v. Callanan,* 271 Md. 554, 318 A.2d 809 (1974).

The discipline imposed in both this case and in *In re Kleindienst* conformed to that recommended by the disciplinary board of the bar association.[5] *Compare In re Mercer,* 133 Ariz. 391, 394–95, 652 P.2d 130, 132, 133–34 (1982). While we consider each matter de novo, we have long held that the recommendations of the state bar are entitled to serious consideration. *In re Moore supra; In re Macdonald,* 56 Ariz. 120, 123, 105 P.2d 1114, 1115 (1940). We feel that this rule should still obtain, especially since the disciplinary board now includes lay members as well as lawyers.[6] Rule 27(*l*).

■ Respondent then argues that discipline should be mitigated because the acts charged concerned his personal business affairs and did not damage his clients. It may be true that the respondent's clients were not damaged, but we do note that his acts did involve the manner in which he operated his law practice. While we agree with respondent that the fact that an attor-

5. If, as respondent intimates, the discipline imposed here is inappropriately severe compared to that imposed on Mr. Kleindienst, we can only say that if Mr. Kleindienst got less than he deserved, we do not propose to make the same mistake twice. See dissent by this writer, urging disbarment of Mr. Kleindienst. *In re Klein-*

*dienst, supra,* 644 P.2d at 256. I do not depart from the views expressed in that dissent.

6. The deference which we show to bar recommendations carries a corresponding obligation—that the bar carefully examine the issue of proportionality of each recommendation.

ney's transgressions pertain to his personal business and did not harm his clients may be considered in imposition of discipline, we also note that the purpose of discipline is to protect the public, the profession and the administration of justice, *In re Nulle,* 127 Ariz. 299, 303, 620 P.2d 214, 218 (1980), and to deter other lawyers from improper conduct. *In re Stout,* 122 Ariz. 503, 504, 596 P.2d 29, 30 (1979). As stated by bar counsel, the offenses in the case at bench "show a continuous pattern of dishonesty and deception" which reflects upon and tends to establish a "basic lack of honesty." We cannot accept the contention that since respondent's acts did not damage his clients the public therefore needs no protection and only minimal discipline is appropriate. *Maryland State Bar Association, Inc. v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974), another case involving a lawyer's failure to record and report income, answers respondent's contentions on this issue. In discussing the argument that the unrecorded income did not come from the practice of law and that no clients had been damaged, the court stated:

> Few vocations offer as great a spectrum for good and honorable works as does the legal profession. The attorney is entrusted with the life savings and investments of his clients. He becomes the guardian of the mentally deficient, and potential savior for the accused. He is a fiduciary, a confidant, an advisor, and an advocate. However, the great privilege of serving in all of these capacities does not come without the concomitant responsibilities of truth, candor and honesty.
>
> . . . .
>
> A court has the duty . . . to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary procedures have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public. The administration of justice under our adversary system largely depends upon the public's ability to rely on the honesty of attorneys who

are placed in a position of being called upon to conduct the affairs of others both in and out of court. . . . In a proceeding such as this, therefore, the underlying question is "whether, after the conduct of this man, it is proper that he should continue [as] a member of [the legal] profession . . ." In the absence of a compelling exculpatory explanation, we think that the answer to this question must be no when an attorney is found guilty of a crime which is deemed to involve moral turpitude and the offense entails the employment of dishonesty, fraud, or deceit which is perpetrated to enrich the offending attorney or to enhance his own well-being at the expense of his client, the state, or any other individual.

> As can be discerned from this statement, we see no significant moral distinction between willfully defrauding and cheating for personal gain a client, an individual, or the government. Cheating one's client and defrauding the government are reprehensible in equal degree.

*Id.* at 549–50, 318 A.2d at 814–15 (citations omitted). We believe the quoted words are particularly applicable to the case at bench.

Finally, respondent asks us to note that under Rule 41(a) he will be unable to seek reinstatement until the entire suspension period has expired, while if he were suspended indefinitely or disbarred the rule permits application for reinstatement in two years. The latter point is technically correct, but irrelevant. While the rules do give a lawyer who has been indefinitely suspended or disbarred a right to apply for reinstatement within two years, they do not guarantee that he will be reinstated. In any event, we are well aware that petitioner will not be able to apply for reinstatement until five years are past, and that his petition may not be accepted even then, and we are not disturbed by this prospect. We find it repugnant to the basic standards of the legal profession to allow a lawyer with respondent's present and past record to continue to practice law and represent clients in the courts of this state. We believe the recommended discipline is appropriate.

Therefore, we order that the respondent be suspended from the practice of law for a period of five years, effective sixteen days from the date that this opinion is filed. Respondent should be given credit against this five-year suspension for the period of suspension pending appeal to the Ninth Circuit of his original conviction. Pursuant to Rule 37(g), it is also ordered that costs be assessed against respondent in the amount of $1,721.01.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.