495 P.2d 851

**In the Matter of the Application for Reinstatement of Raymond E. PETERSON to the State Bar of Arizona.**

Supreme Court of Arizona,
In Banc.

April 13, 1972.

Raymond E. Peterson, in pro. per.

HAYS, Chief Justice.

On April 15, 1964, Raymond E. Peterson, a member of the Arizona State Bar practicing in Pinal County, was disbarred by this court. Our opinion in that case is reported at 96 Ariz. 47, 391 P.2d 599.

The Local Administrative Committee which investigated the complaints leading to the disbarment found at least three serious charges against Mr. Peterson. The first was that, by forging checks on a client's bank account containing estate funds, he had obtained about $13,000. The second was that he wrongfully failed to pay $850 to a man named Nutter. The third was that, by lack of diligence, a settlement in favor of a client named Joebgen was very much less than it should have been.

Since the forgery was sufficient to disbar Peterson, the other two charges were not pressed, and no criminal charges were brought.

His petition for reinstatement was filed October 21, 1969, roughly five and one-half years after he was disbarred. It was referred to the Local Administrative Committee which forwarded it to the Board of Governors of the Arizona State Bar with four out of the five members of the Committee recommending denial of reinstatement.

The Board of Governors held a hearing and invited Peterson to appear with any witnesses that he cared to bring. He appeared without any witnesses because of the expense of bringing them from Los Angeles, and because "there has been no refutation of the statement[s] which I made in my petition." The Board members examined Peterson orally on several topics and had the benefit of a cursory investigation made for it by the California State Bar. The complete file has been transferred to this court for final decision, by the Board of Governors which voted five-to-one that the petition be denied, with four members not voting.

In the case of a petition for reinstatement of a disbarred attorney, the principal inquiry is what has taken place since the disbarment. In the instant case, many things point in his favor. His wife has remained with him. He has worked for several title companies with regular promotions and pay increases and is now vice president of one at an annual salary of $11,350 plus a car. His wife is working as a legal secretary at an annual salary of $6,550.

During this period he has paid back, in monthly installments, the amount which he wrongfully took by means of the forged checks. His employers all speak highly of both his competence and their trust in him. His apartment landlords state that he and his family are fine tenants, pay the rent, and cause no trouble.

If this were a petition for a parole by a man in prison, we should feel that justice ought to be tempered with mercy and that he should be given another chance. As we said in In re Van Bever, 55 Ariz. 368, 101 P.2d 790, "[w]hile the lamp holds out to burn, the vilest sinner may return, . . ." However, this is a petition to return a man to the active ranks of the legal profession. The burden on a petitioner to establish his right to re-enter that profession is a matter of much higher concern. Disbarment is not imposed as punishment, but rather to protect the public

and the other members of the bar, and to deter other lawyers from the temptation to violate their ethics.

In addition, there are several matters that are not completely clear. The repayment of the estate moneys wrongfully taken by the petitioner has not been accompanied by a repayment of some $2,500 attorney's fees spent to recover that money. The Bar Security Fund paid $850 on the Nutter claim, none of which has been repaid. Petitioner's stated reason for not having paid this, is that he had no knowledge that the fund had paid it. However, the file shows that in a lawsuit by Nutter against Peterson, the latter entered his appearance, signed a waiver of jury trial, and gave permission for the superior court to try the case without further notice to him. We, therefore, can hardly consider him to have made a full and frank disclosure of this item when, at his hearing, he testified: "To my knowledge I was never served in that action and so therefore I really don't know about it."

One of the objections to Peterson's reinstatement is the fact that he left the state without leaving his address even with his wife for a period of time. During that time, other lawyers attempted to help his clients with pending matters and were denied the use of Peterson's files, making fair treatment of his clients virtually impossible.

With regard to the claim of Joebgen, Attorney Segal stated for the record that he represented the defendant, J. I. Case Company, and that he believed that Peterson had given his client, Joebgen, reason to believe that he would receive much more than he was entitled to.

Peterson states that he is going to refinance a piece of realty and use the money from that to pay the $2,500 attorney's fee and the $850 Nutter claim—a total of $3,350. From the financial statement which is attached to his petition, he shows a piece of real estate as an asset worth $22,000 with a loan against it of $20,534, leaving him with an equity of less than $1,500. It is difficult to believe that any kind of refinancing will produce $3,350 to pay off these obligations which are the result of charges predating his disbarment and still unpaid after five years.

The petitioner has not sustained his burden of establishing that he should be reinstated to membership in the State Bar of Arizona.

Petition for reinstatement denied.

STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.

Note: Vice Chief Justice CAMERON did not participate in the determination of this matter.