614 P.2d 816

**In the Matter of a Member of the State Bar of Arizona, Paul W. MERCER, Respondent.**

No. SB–183.

Supreme Court of Arizona, En Banc.

July 14, 1980.

Garrett W. Simpson, Phoenix, for State Bar.

Paul W. Mercer, Phoenix, in pro. per.

HAYS, Justice.

A copy of the Local Administrative Committee's Findings and Recommendations was mailed to Respondent on July 13, 1979. No objections thereto were filed.

On October 11, 1979 the Respondent was notified that the Disciplinary Board of the State Bar of Arizona had accepted the Administrative Committee's Findings but had recommended a two-month suspension rather than a private reprimand. A hearing was set for November 16, 1979 and Respondent was notified. Respondent requested a continuance of the hearing which was denied.

At the hearing an attorney appeared on behalf of the Respondent and the Board thereafter voted to affirm its earlier decision to recommend a 60-day suspension.

Respondent then filed with the Supreme Court his objections to the recommendations.

The Respondent has not at any stage objected to the Findings of the Administrative Committee. We set forth those Findings below:

## "FINDINGS OF FACT

### I.

"Respondent, Paul W. Mercer, is an attorney admitted to practice in the State of Arizona since September, 1969.

### II.

"Respondent's primary area of practice is with regard to tax-related matters.

### III.

"On August 6, 1974, complainant, Inez W. Ryan, was injured as the result of a job-related accident.

### IV.

"In February, 1975, Mrs. Ryan employed the services of Respondent to represent her in connection with pursuing a claim for benefits through the Industrial Commission of Arizona pursuant to Title 23, Chapter 6, Articles 1–9.

### V.

"On December 30, 1976, the Workmen's Compensation carrier insuring Mrs. Ryan's employer, issued a Notice of Claim Status terminating Mrs. Ryan's temporary disability compensation and medical benefits effective December 21, 1976. At the same time, the insurance carrier sent to Respondent a check made payable to both Mrs. Ryan and Respondent in the sum of $4,306.50 representing Mrs. Ryan's disability compensation benefits for the period September 3, 1976 through December 21, 1976. This action was taken by the carrier pursuant to a

decision rendered by the Industrial Commission of Arizona on July 19, 1976 and was as the result of efforts by Respondent on behalf of his client.

### VI.

"Respondent thereafter initiated proceedings on behalf of his client in the Industrial Commission of Arizona contesting the action and determination of the Workmen's Compensation carrier. No additional disability benefits were awarded to Mrs. Ryan as the result of the further Industrial Commission of Arizona proceedings.

### VII.

"Additionally, partially through the efforts of Respondent, Mrs. Ryan's medical, surgical and hospital benefits were paid on behalf of Mrs. Ryan by the Workmen's Compensation carrier in the total amount of approximately $4,000.00.

### VIII.

"During the period August 6, 1974 to June 8, 1977, Mrs. Ryan applied for and received from the Arizona Employment Security Commission the sum of approximately $4,000.00 in unemployment compensation. Respondent performed no services on behalf of Mrs. Ryan in connection with her obtaining said $4,000.00 in unemployment compensation benefits. In fact, Respondent was not aware that Mrs. Ryan had applied for and received such benefits until that was revealed at one of the hearings before the Industrial Commission of Arizona in the spring of 1977.

### IX.

"On June 8, 1977, the Industrial Commission of Arizona issued its Decision Upon Hearing and Findings an Award for Temporary Disability affirming, in effect, the Industrial Commission of Arizona's prior determination of July 19, 1976 and the action taken by the Workmen's Compensation carrier on December 30, 1976.

### X.

"The original fee agreement entered into between Respondent and Mrs. Ryan was an hourly fee arrangement based upon a charge of $50.00 per hour.

### XI.

"As the matter progressed, Respondent felt that on the basis of a charge of $50.00 an hour, the amount of the fee based upon the number of hours being expended would exceed the amount which could reasonably be expected to be recovered by way of disability benefits on Mrs. Ryan's behalf. Accordingly, some time prior to June 8, 1977, the fee agreement was changed to provide for a one-third contingency fee to be charged by Respondent.

### XII.

"On May 15, 1977, Mrs. Ryan discharged Respondent as her attorney. On or about August 19, 1977, Mrs. Ryan requested the Industrial Commission of Arizona to set Respondent's attorney's fee pursuant to A.R.S. § 23–1069.

### XIII.

"Respondent submitted to the Industrial Commission of Arizona a statement reflecting that he had expended 79.5 hours on Mrs. Ryan's behalf and had expended $122.40 in costs.

### XIV.

"Without conducting a hearing on the matter, the Industrial Commission of Arizona on December 15, 1977 entered an order awarding Respondent the sum of $4,500.00 for attorney's fees.

### XV.

"On December 29, 1977, Mrs. Ryan through new counsel protested the Industrial Commission of Arizona's award of $4,500.00 for attorney's fees. A hearing in connection with the protest was held on March 21, 1978. Thereafter, on June 30, 1978, the Industrial Commission of Arizona hearing officer rendered a decision reducing

the amount of attorney's fees to be awarded Respondent from $4,500.00 to $1,076.64 plus $122.40 in costs.[1]

## XVI.

"Respondent has requested the Arizona Court of Appeals, by way of special action, to review the determination by the Industrial Commission of Arizona reducing Respondent's attorney's fees. That matter in the Arizona Court of Appeals captioned 'Mercer vs. Industrial Commission of Arizona, number 1 CA–IC 2085' was decided by the Arizona Court of Appeals on June 26, 1979 affirming the June 30, 1978 order of the Industrial Commission of Arizona awarding Respondent $1,076.64 plus $122.40 in costs.

## XVII.

"Shortly after Respondent received the Workmen's Compensation insurance carrier's check in the amount of $4,306.50, Respondent's office contacted Mrs. Ryan requesting that she come to Respondent's office to endorse the check. Mrs. Ryan came to Respondent's office and endorsed the check which was retained in Respondent's possession.

## XVIII.

"At the time Mrs. Ryan endorsed the insurance carrier's check, she inquired of Respondent's secretary as to when she could expect her share. Respondent's office informed Mrs. Ryan that she would receive her share of the check shortly.

## XIX.

"Respondent has negotiated the insurance carrier's check but has not disbursed any portion of it to Mrs. Ryan and has retained the entire amount and continues to retain the entire amount of $4,306.50 in Respondent's trust account awaiting determination of the fee issue.

1. The $1,076.64 figure represents an amount equal to twenty-five percent (25%) of $4,306.50 (footnote in original).

## XX.

"Respondent is charging Mrs. Ryan a fee equal to the sum of 33⅓ percent of $12,-306.50 constituting the approximate sum of $4,000.00 received by Mrs. Ryan as unemployment compensation from the Arizona Employment Security Commission, the approximate sum of $4,000.00 paid on Mrs. Ryan's behalf for medical, surgical and hospital benefits, and $4,306.50 disability compensation benefits paid pursuant to the Workmen's Compensation law; 33⅓ percent of $12,306.50 equals $4,061.15 which when added to the cost figure of $122.40 totals $4,183.55.

## XXI.

"Respondent further claims that Mrs. Ryan is indebted to him in the additional amount of $587.50 by virtue of Mrs. Ryan agreeing to pay Respondent an attorney's fee for services performed by Respondent on behalf of Mrs. Ryan's brother. Mrs. Ryan denies having entered into such agreement with Respondent. The committee finds that no such agreement was in fact entered into. However, the committee further finds that even were such an agreement entered into, Respondent is not entitled to withhold from the $4,306.50 disability benefit check any amount with regard to payment for services rendered to Mrs. Ryan's brother.

## XXII.

"Arizona Revised Statutes § 23–1069 provides:

" 'A. In proceedings before the commission in which an attorney employed by the claimant has rendered services reasonably necessary in processing the claim, the commission shall, upon application filed by the attorney or the claimant prior to a final disposition of the case, set a reasonable attorney's fee and shall provide for the payment thereof from the award, in installments or otherwise, as the commission determines proper in view

of the award made, and shall further provide for the payment of the attorney's fee direct to the attorney. The commission shall charge the amount of the payment against the award to the claimant.

B. The attorney's fee provided for in subsection A shall be not more than twenty-five percent up to ten years from the date of the award. In cases involving solely loss of earning capacity, the maximum shall be twenty-five percent up to five years from the date of the final award. When the payment of the award to the claimant is made in installments, or in other than a lump sum manner, in no event may an amount in excess of twenty-five per cent of any one such installment payment be withheld for the attorney's fee.

C. The reasonableness of the attorney's fee set pursuant to subsection A shall be reviewable upon the application of the claimant or the attorney in the same manner as other awards of the commission.' "

### XXIII.

"While an hourly fee is not necessarily unusual, the legal fee customarily charged in the Phoenix community for representation of clients before the Industrial Commission of Arizona in matters such as that involving Respondent's representation of Mrs. Ryan is a twenty-five percent (25%) contingency fee based upon the amount of disability benefits obtained by an attorney on behalf of his client over and above that which the client has received or been awarded prior to employment of the attorney.

### XXIV.

"In including the $4,000.00 which Mrs. Ryan received from the Arizona Employment Security Commission in the computation of the fee charged by Respondent, Respondent has charged a fee for which he performed no services for his client.

2. See also A.R.S. §§ 23–1062 and 23–901 (footnote in original).

### XXV.

"Both Arizona Revised Statutes § 23–1069 and the fees customarily charged in this community exclude the inclusion of amounts paid on behalf of a Workmen's Compensation claim for medical, surgical and hospital benefits.[2]

### XXVI.

"In connection with his representation of Mrs. Ryan, the questions involved and skill required by Respondent were neither novel, difficult nor extra-ordinary (sic).

### XXVII.

"Respondent possesses no particular experience, reputation or ability in connection with representing clients before the Industrial Commission of Arizona justifying a fee beyond that normally charged in the community.

### XXVIII.

"By including in the amount upon which Respondent based his contingent fee the sum received by Mrs. Ryan from the Employment Securities Division of Arizona, Respondent charged his client a fee for which he performed no services and the fee charged was therefore clearly excessive in violation of D.R. 2–106.

### XXIX.

"By including in the amount upon which Respondent based his contingent fee the payments made on behalf of Mrs. Ryan for medical, surgical and hospital benefits, Respondent charged his client a clearly excessive fee in violation of D.R. 2–106.

### XXX.

"In view of the Industrial Commission of Arizona hearing officer's determination of June 30, 1978 that Respondent was entitled to a fee of twenty-five percent (25%) of the amount of $4,306.50 or $1,076.64 and Respondent continues to retain the full amount of $4,306.50, Respondent has

charged his client a clearly excessive fee in violation of D.R. 2–106.

### XXXI.

"In including as a basis for the retention of the full amount of $4,306.50 the $587.50 disputed fee in connection with services rendered by Respondent for Mrs. Ryan's brother, Respondent is charging his client a clearly excessive fee in violation of D.R. 2–106."

In his brief the Respondent attempts to minimize the effect and implications of his acts urging that no serious violations have occurred. Clearly, as stated in the findings, by attempting to charge a fee on the sum received by his client from the Employment Securities Division of the Department of Economic Security, he violated D.R. 2–106. This alone warrants the disciplinary action recommended by the Board. There is more than sufficient other evidence in the record to mandate a brief suspension.

The Respondent is suspended from the practice of law for two months commencing 30 days from the issuance of the mandate. Further ordered that the Respondent is assessed costs in the sum of $767.35.

HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.

STRUCKMEYER, Chief Justice, specially dissenting.

The Administrative Committee recommended to the Disciplinary Board of the State Bar of Arizona that there be issued a private reprimand to the respondent, Mercer. The Disciplinary Board recommended a two-month suspension. I am of the opinion that two months' suspension is a wholly inadequate and inappropriate punishment for such unconscionable charges. It is alarming to me that both the Administrative Committee and the Disciplinary Board seem to feel that this is a minor violation of the Disciplinary Rules. I do not think so.

Here, in a case in which an injured person's claim is processed almost automatically without the need of a lawyer, Mercer charged a fee of nearly 100% of what his client received as compensation. In this Court respondent still argues that the fee he charged was not excessive. It is obvious that he does not understand the basic concepts of a lawyer's moral obligations to society. The facts of this case at a minimum justify a suspension for two years. The State of Arizona is not a jungle where stragglers are fair game to be picked off by the ruthless.