Submitted on the record March 15, accused suspended for 30 days May 18, petition for rehearing denied, judgment for costs withdrawn (293 Or 359, 647 P2d 933) July 7, petition for rehearing denied September 28, 1982

In re Complaint as to the Conduct of

# GEORGE T. GANT,
*Accused.*

## (OSB 80-23, SC 28390)

645 P2d 23

Cameron C. Thom, Coos Bay, for accused.

William G. Carter and William S. Dames, Medford, for Oregon State Bar.

PER CURIAM.

## PER CURIAM

The first charge against the accused attorney involves another instance of the ethical difficulties so frequently encountered when a lawyer enters into a business transaction with a client.

As a result of a complaint by a client, or former client, several disciplinary charges, all arising out of the relationship with the client and her then husband were made against the accused. The Trial Board found the accused guilty of the first two charges and not guilty of the third and fourth charges and recommended a 30-day suspension. The Disciplinary Review Board made the same findings but recommended a public reprimand.

The accused then petitioned this court to adopt the opinion, findings of fact and recommendation of the Disciplinary Review Board. Counsel for the Bar filed a response "for the purpose of assisting the Court in making a determination herein." Counsel for the Bar made no recommendation.

■ We adopt the pertinent portions of the opinion and findings of fact of the Disciplinary Review Board which are as follows:

"In September 1971, the Accused represented Donna Losey, who at the time was Donna Thompson, in an uncontested marriage dissolution suit. The marriage was of about two years duration and no property rights, spousal support, or child custody was involved (EX. 1).

"In 1975, Donna Losey was sued in District Court for Curry County by a building supply company for materials furnished to a tenant of one of her rentals. The Accused represented her. The plaintiff's case had little merit and was concluded in favor of defendant at the end of plaintiff's case--in less than half a day. The trial was on September 18, 1975, and the Judgment Order was signed September 23, 1975 (EX. 2). At that time the Accused learned of Donna Losey's antique business in Brookings.

"The Accused indicated his former wife, Pat Gant, might be interested in being involved in such a business. After some visits and negotiations, it was decided a partnership would be formed by the Accused; his former wife, Pat Gant; Donna Losey; and her husband, John Losey. The business would be operated in rented space in Pony

Village, a shopping mall in North Bend, Oregon. Articles of Partnership were drawn by the Accused and signed by the parties as of October 26, 1975 (EX. 3).

"The evidence as to what was said by the Accused to the other three concerning seeking independent legal advice is uncertain, other than the testimony of Donna Losey. She states no such suggestion was made to her nor to her husband as far as she knew (TR. 22). John Losey testified the Accused did not recommend that he and his wife contact another attorney for independent legal advice, but that the Accused did say if they wanted to have an attorney check the Partnership Agreement, it was fine with him (TR. 203). Pat Gant, the Accused's former wife, testified the Accused may have suggested she talk to other counsel but that she just did not remember (TR. 218). Finally, the Accused testified he did not remember whether he had or had not given such advice (TR. 145).

"The business did not do well. Originally it was in a low rent space of the shopping center in anticipation of obtaining larger and better space in a building then under construction. In the spring of 1976, leases were being offered for the new building. It appeared the rent for the store would be three times what the parties were then paying plus substantial advance payments. The parties decided to close the store. The four then met, inventoried the merchandise, loaded it on a truck and trailer, and the Loseys took it to their store in Brookings.

"The partnership started with a cash contribution from the Accused and his former wife of $7,500.00 and the Loseys contributed merchandise at cost (EX. 19). When the store closed, the merchandise the Loseys took was given the same value as when it was put into the business (EX. 20). The Accused prepared an accounting which showed a balance due to the Gants from the Loseys of $3,879.03. This figure was not at the time nor has it since been challenged. Payments totalling $1,300.00 were made in March and July 1977 and September 1978. Because of business arrangements between Donna Losey and her husband, probably because Donna Losey was operating the antique store in Brookings, Donna Losey agreed she would be responsible for the balance due.

"In late 1977 or early 1978, Donna Losey called the Accused concerning problems she was having with John Losey. The Accused told her he could not represent either one of them. Subsequently, Donna Losey filed a separation proceeding against John Losey, being represented by

Attorney John Coutrakon of Brookings. John Losey made no appearance and Donna Losey obtained a Decree by default in July 1978.

"In September 1978, Donna Losey and the Accused were apparently still on good terms because the attorney in Brookings, on her behalf, asked the Accused to assist in closing a land sale in Coos Bay in which she was involved.

"In October 1978, John Losey consulted the Accused concerning the Decree obtained by default in Donna Losey's suit for separation. The Accused thought the Decree was inequitable and unfair (TR. 192). The Accused on behalf of John Losey filed a Motion, Affidavit, Response, etc., in an attempt to set the Decree aside but was unsuccessful. The Accused then appealed from the ruling of the Circuit Court.

"* * * * *.

"Later in July 1979, the Accused filed an action against Donna Losey for the balance due as a result of the dissolution of the partnership. Donna Losey attempted unsuccessfully to have John Losey brought in as an indispensable party (EX. 15 A through F). Later, John Losey agreed voluntarily to become a party defendant and by a stipulation and judgment order (EX. 16) a judgment was entered in favor of the Accused against Donna Losey and John Losey. (EX.16 is undated, but the testimony indicates it was sometime in early 1980). It was about this time Donna Losey first complained to Oregon State Bar.

"In the meantime and in December 1979, the Accused, on behalf of John Losey, filed a Petition to dissolve the marriage between John Losey and Donna Losey (EX. 14).

"The record indicates that commencing in the middle of 1978 Donna Losey was represented by or consulted, in addition to John Coutrakon of Brookings, J. B. Bedingfield of Coos Bay, Gary C. Peterson of Medford, and Roger Gould of Coos Bay.

## "FINDINGS AND CONCLUSIONS

"1. The First Cause against the Accused is based upon Canon 5, Code of Professional Responsibility; Subsection (A) of DR 5-101, Refusing Employment When the Interests of the Lawyer May impair His Independent Professional Judgment; and Subsection (A) of DR 5-104, Limiting Business Relations with a Client. The Trial Committee found the Accused guilty on three of the six specifications set forth in the First Cause.

"It is not necessary to determine whether the attorney-client relationship with Donna Losey still existed as a

result of the dissolution proceedings in 1971. The Accused did represent her in the defense of the District Court case filed against her. At that time, an attorney-client relationship certainly existed. Shortly after the trial in September 1975, the Accused, Pat Gant, Donna Losey and John Losey entered into discussions and negotiations about opening a business. This resulted in the formation of the partnership and the signing of the Articles of Partnership.[1]

---

[1] See Ethics Opinion 190 and the portion thereof quoted *In Re Robertson*, 290 Or 639, decided March 4, 1981, concerning the inception and termination of attorney-client relationship.

"* * * * *.

"In regard to John Losey, the Accused cites *In Re Geurts*, 280 Or 303 (1977). It is not applicable. In *Geurts* the Accused was charged with misconduct in borrowing money from a client. It was found the attorney-client relationship did not exist at the time of the loan. The opinion in *Geurts* sets forth no facts. Here we have an ongoing business. Here the Accused was doing work for the partnership. Although much of the work could have been considered 'business' rather than 'legal', when a lawyer is involved in a business partnership and the partnership has no outside lawyer, it must be assumed some of the work the lawyer does for the partnership is 'legal' and is for each of the individual partners including himself. There is no substantial evidence that the Accused recommended or even suggested Donna Losey and John Losey should have advice of independent counsel concerning the commencement, operation, and dissolution of the partnership.

"The Partnership Agreement, prepared by the Accused (EX. 3), contains nothing that is unusual or unfair. No complaints have been made about the terms of the Partnership Agreement. No complaints have been made about the activities of the Accused while the business was in operation. The testimony indicates all four partners participated in the closing of the business, although Donna Losey does not remember being present. No one objected to the determination that $3,879.03 was due to the Gants from their original investment of $7,500.00.

"No evidence was produced indicating the Accused had an unfair advantage or overreached. No evidence was produced that the Loseys suffered any loss by operating in a business partnership where one of the partners was a lawyer, because a lawyer had not advised them and recommended to them that they seek independent legal advice.

"Although partners in a business anticipate their individual interests will be similar, they can and often do have differing interests. In addition, the Loseys could well expect the Accused to exercise his professional judgment for their individual protection. The fact that it was possible for the Accused and Loseys to have differing interests and also possible the Loseys expected the Accused to exercise his professional judgment for their individual protection, it was incumbent upon the Accused to advise Donna Losey and John Losey to seek independent outside legal advice.

"In failing to advise Donna Losey and John Losey to seek independent outside legal advice before commencing the business, during the operation of the business, and in the closing of the business, the Accused violated Canon 5 of the Rules of Professional Conduct and Disciplinary Rule DR 5-101(A) and DR 5-104(A).

"2. The Second Cause against the Accused is based upon ORS 9.406(5); Canon 4 of the Code of Professional Responsibility; DR 4-101(B), Preservation of Confidences and Secrets of a Client; Canon 5 of the Code of Professional Responsibility; and DR 5-105(A)(C), Refusing to Accept or Continue Employment If the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer. The Trial Committee found the Accused guilty on all four of the specifications in the Second Cause.

"There is no question that in the mind of Donna Losey and probably in the mind of the Accused that the client-attorney relationship continued to exist between Donna Losey and the Accused at least until September 1978. By letter dated September 14, 1978, to Donna Losey, the Accused acknowledged receipt of the telephone call from Attorney Coutrakon stating that Donna Losey wanted the Accused to handle the sale of some real property in Coos Bay. The Accused indicated he would be happy to do this, but he wanted authorization in writing (EX. 12). A month later, the Accused, on behalf of John Losey, prepared and filed a Motion, Affidavit, and Response to set aside the Decree obtained by Donna Losey in her suit for separation against John Losey (EX. 13). Further, in December 1979, the Accused, on behalf of John Losey, filed suit to dissolve the marriage of John Losey and Donna Losey (EX. 14).

"Unquestionably, an attorney-client relationship between the Accused and Donna Losey started in September 1975 (if not in 1971, the time of the domestic relations suit) and continued until at least September 14, 1978, based on the letter of the Accused to Donna Losey

stating he would represent her in a land transaction. The following month the Accused was representing John Losey in an adversary type proceeding against his former client.

"ORS 9.460(5) directs 'An attorney shall: (5) Maintain in inviolate the confidence, * * * of his clients.' In defining 'confidence' the dictionary uses such terms as trust, state of feeling sure, state of mind characterized by reliance, state of trust.

"The actions of the Accused violated ORS .9.460(5); Canon 5 of the Rules of Professional Conduct; and DR 4-101 (B); Canon 5 of the Rules of Professional Conduct; and DR 5-1051 (A) (C)."

As did the Trial Board and the Disciplinary Review Board, we find the accused not guilty of charges 3 and 4.

■    With regard to what discipline is appropriate, it appears to us that it should have been clear to the accused, a lawyer of 25 years experience, that it was improper for him to represent John Losey in litigation against Donna Losey. Since 1971 he had represented her individually, with John, and as a partner. As late as September 1978, in conjunction with another attorney, he had represented her in a real estate transaction and yet one month later he entered litigation against her.

In *In re McCaffrey,* 275 Or 23, 549 P2d 666 (1976), the lawyer was publicly reprimanded for commencing the representation of a wife in a dissolution proceeding after he previously had represented the husband and the husband and wife in various matters. In that case, however, after the husband's lawyer complained about the accused's representation, the accused told the wife to get another lawyer; she did not want to, so the accused had his partner do most of the remaining work.

We deem the accused's conduct more blatant in this case and suspend the accused from the practice of law for 30 days commencing June 7, 1982.

Judgment to the Oregon State Bar for costs.