Submitted on record April 26, accused reprimanded May 10, 1983

In re: Complaint as to the Conduct of

**LOUISE JAYNE,**
*Accused.*

(NO. 81-33, SC 29413)

663 P2d 405

David F. Cargo, Portland, for the Accused.

Donald R. Wilson of Pozzi, Wilson, Atchison, O'Leary & Conboy for the Oregon State Bar.

Before Lent, Chief Justice, and Peterson, Campbell, Carson and Jones, Justices.

PER CURIAM

## PER CURIAM.

The only matter for decision is the sanction to be imposed for conduct of the accused that was in violation of disciplinary rules contained in the Code of Professional Responsibility. The complaint charged violation of DR 4-101 and 5-105. DR 4-101 is concerned with a lawyer's ethical obligation to preserve the confidences and secrets of a client. DR 5-105 describes the lawyer's duty to refuse to accept or to continue employment on behalf of a client if the exercise of independent professional judgment of the lawyer on behalf of that or another client will be impaired.

Having been so charged, the accused eventually conceded that the essential allegations of the complaint were true, but presented to the Trial Board evidence in mitigation. Both the Trial Board and, in due course, the Disciplinary Review Board found that the facts constituted violations of the pertinent disciplinary rules, and both boards recommended that the accused be given a public reprimand by this court.

The facts are taken from stipulation and from our independent examination of the record.

This matter grows out of the accused's representation of Lawrence and of LaVerna.[1] Lawrence was a member of the Klamath Tribe of American Indians and, as such, had an estate in a conservatorship. The conservator was a Klamath Falls lawyer. The accused first represented Lawrence in 1957 upon a criminal charge in the United States District Court for the District of Oregon.

Over the ensuing years from the time of that first representation, when Lawrence would run afoul of the law in the Portland area, which was often, the accused represented him. Upon legal matters in the Klamath Falls area, Lawrence would be represented by lawyers practicing there. During a part of the time from 1957 to 1974 Lawrence lived in the Portland area, and the conservator would send living expense checks, payable to Lawrence, to the accused to distribute to Lawrence on a weekly basis. This, of course, entailed the accused and Lawrence seeing each other often.

---

[1] The last names of the clients are not important and neither are the names of the children of the clients.

In late 1974 or early 1975, Lawrence inquired of the accused about his adopting LaVerna's young child who had been born out of wedlock and was not Lawrence's child. The accused advised Lawrence of the slim prospects of his being able to adopt in the circumstances. A few months later, Lawrence brought LaVerna to the accused's office again to discuss adoption. The accused gave him advice similar to that given earlier.

Later, Lawrence married LaVerna and again approached the accused to attempt adoption of the child. The accused prepared a petition for Lawrence and apparently also prepared a form of consent to the adoption for LaVerna's execution. The adoption was allowed. Two more children were born of this union.

Thereafter, the accused continued to serve as Lawrence's lawyer and, pursuant to his requests, represented both Lawrence and LaVerna, jointly and singly, in various legal matters. For example, in July, 1978, LaVerna was driving an auto in Salem with the three children in the car and was involved in an accident. She was arrested and jailed, and the children were placed in shelter care and eventually became the subject of dependency proceedings in Multnomah County Juvenile Court. The accused represented LaVerna on criminal charges arising out of operation of the vehicle and represented both Lawrence and LaVerna in the juvenile court proceedings.

In September of 1980, LaVerna was arrested in Klamath Falls for driving while under the influence of intoxicants and for failing to perform the duties of a driver at the scene of an accident. Again at Lawrence's request, the accused represented LaVerna.

The marriage of the parties deteriorated, and about the middle of December, 1980, both parties were in the accused's office concerning dissolution of the marriage and division of property. Thereafter, LaVerna left the family home and took the children with her. She called the accused on January 19, 1981, to advise the accused as to her whereabouts so she could be reached concerning the pending charges in Klamath Falls. The accused and LaVerna again talked on the telephone on January 21 and January 22 and discussed, among other things, counseling and a reconciliation. During the call on January 22, LaVerna informed the accused she was not interested

in counseling or a reconciliation. The following day, the accused, representing Lawrence, filed a petition on his behalf to dissolve the marriage, award him custody of the children and determine the property rights of the parties.

On January 30, 1981, an attorney representing La-Verna in the dissolution proceeding telephoned the accused and requested her to withdraw from representing Lawrence because of the conflict of interest. The accused denied any conflict of interest.

In some manner, the question of whether there was a conflict of interest and whether the accused should withdraw was brought before Judge Mercedes Deiz. On February 26, 1981, Judge Deiz stated she had no jurisdiction to enter an order one way or the other. Judge Deiz declined to rule.

On February 27, 1981, counsel for LaVerna sent a letter of complaint to the Oregon State Bar. Before she received a copy of the letter, the accused had called the General Counsel of the Oregon State Bar and requested an advisory opinion from the Ethics Committee. The accused responded to the letter of complaint by letter dated March 17, and on March 25, 1981, the Assistant General Counsel of the Oregon State Bar wrote the accused a letter stating that in his personal opinion her representation of Lawrence was in violation of DR 5-105. At that point the accused withdrew from representation of Lawrence.

We agree with both the Trial Board and the Disciplinary Review Board that the conduct of the accused violated the pertinent disciplinary rules. The accused offered evidence in mitigation, however, and we find from that evidence the following facts.

The accused, in her own mind, felt she was lawyer for Lawrence and that her representation of LaVerna in the various matters was simply a part of her ongoing representation of Lawrence. The accused believed that both parties understood that she was Lawrence's lawyer, not LaVerna's lawyer. After the conflict of interest question was brought to the accused's attention by LaVerna's counsel, the accused did not further prosecute the dissolution proceeding other than to make some calendar appearances and to appear before Judge Deiz in an attempt to obtain a ruling as to whether she had a conflict that

would bar her from proceeding as Lawrence's counsel. After Judge Deiz declined to rule, the accused did not appear further in the matter, and on Lawrence's next appearance in the case on March 26, 1981, he was represented by new counsel.

In her testimony before the Trial Board, the accused conceded that she had made a mistake in filing the dissolution proceeding on behalf of Lawrence. She acknowledged that she now recognized that her conduct was in violation of the disciplinary rules, and she was emphatic that she would not make such a mistake again.

The Oregon State Bar did not seek any sanction beyond a public reprimand, and both the Trial Board and the Disciplinary Review Board found that to be adequate. Of course, that is not binding upon this court.

We have compared the circumstances of this accused's violations of the disciplinary rules with violations of the same rules by other lawyers in cases before us in the most recent years. *See, In re Kinsey,* 294 Or 544, 660 P2d 660 (1983); *In re Gant,* 293 Or 130, 645 P2d 23 (1982); *In re Robertson,* 290 Or 639, 624 P2d 603 (1981); *In re Holmes,* 290 Or 173, 619 P2d 1284 (1980); *In re Galton,* 289 Or 565, 615 P2d 317 (1980); *In re Hershberger,* 288 Or 559, 606 P2d 623 (1980); *In re Brownstein,* 288 Or 83, 602 P2d 655 (1979); *In re Mumford,* 285 Or 559, 591 P2d 1377 (1979); *In re Banks,* 283 Or 459, 584 P2d 284 (1978); *In re Porter,* 283 Or 517, 584 P2d 744 (1978). We publicly reprimanded all of the above except Gant and Robertson, who were suspended for a short period. Comparison of this matter with those matters causes us to conclude that this accused should be publicly reprimanded and this opinion will so serve.

It is so ordered, and the Oregon State Bar is awarded its costs and disbursements. ORS 9.535(4).