139 Ariz. 487 (1984)
679 P.2d 510
In the Matter of a Member of the State Bar of Arizona Thomas B. BURNS, Jr., Respondent.
No. SB-278. State Bar No. 82-3-5R.
Supreme Court of Arizona, In Banc.
March 12, 1984.
Lance F. Jacobs, State Bar Counsel, Phoenix, for State Bar.
R. Michael Traynor, Chandler, for respondent.
CAMERON, Justice.
The respondent, Thomas B. Burns, Jr., was charged with unethical conduct. The Local Administrative Committee found the respondent in violation of the Code of Professional Responsibility, 17A A.R.S., and recommended suspension from the practice of law for nine months. The disciplinary *488 board agreed with most of the findings and conclusions of the local administrative committee and recommended a one-year suspension. We have jurisdiction pursuant to Rules 36(d) and 37, Rules of the Supreme Court, 17A A.R.S.
We must determine:
1. Whether the respondent violated the Code of Professional Responsibility, 17A A.R.S., and;
2. Whether the sanctions imposed were proper.
The facts necessary for a determination of this matter are as follows. The respondent was retained by Mrs. Esther Jett to represent her daughter Kathleen in a personal injury action against J.C. Penney Company. A one-third contingency fee was agreed upon. Kathleen was a sixteen-year-old Air Force dependent at the time of the accident and her medical expenses were paid by the Air Force. The respondent received a letter from the Air Force in April, 1978 informing him of its claim for medical expenses and asking respondent to represent the Air Force to the extent of the claim for medical expenses. The letter, signed by the Assistant Staff Judge Advocate at Luke Air Force Base in Arizona, indicated that pursuant to the Medical Care Recovery Act (42 U.S.C. 2651-2653), the federal government was entitled to recover the value of the medical care given to a dependent. The letter contained the following paragraph:
In the past it has proven mutually advantageous to have counsel include the Government's claim together with that of his client. I am enclosing a memorandum which outlines the workings and benefits of this type of cooperation between counsel and the Government. Also enclosed herewith is a form on which you may, if you so desire, indicate your willingness to cooperate with us in this matter.
Attached to this letter was a "Memorandum for Attorneys Representing the Interests of the United States in Hospital Recovery Cases." The memorandum indicated that the government preferred to cooperate with the attorney so as not to interfere with the attorney's representation of the client. The memorandum also indicated that the United States government was not authorized to pay attorney's fees out of any recovery made pursuant to the statute. The memorandum further indicated that the United States government would furnish official medical records and witnesses at no cost to the injured party and that the United States government would refrain from separate negotiations with the tortfeasor. The respondent did not reply, and did not agree to represent the government in settlement negotiations. When a settlement was reached in November, 1978, the amount agreed upon of $24,517.44 included $20,000 for Kathleen and $4,517.44 which was designated as an Air Force lien.
The release, prepared by J.C. Penney's liability carrier, recited the amount of $24,517.44 "INCLUDING LIEN OF FOUR THOUSAND FIVE HUNDRED SEVENTEEN AND 44/100 DOLLARS held by the United States Air Force claims," and the draft was made to the client and respondent and "U.S. Air Force  Claims." Respondent and client signed the release and the draft, but no release was obtained for the Air Force. The draft was nevertheless negotiated and the total amount deposited in respondent's trust account. The respondent then took as his fee, one third of the total proceeds of $24,517.44, less costs, or $8,200, and gave Kathleen $11,800. He retained the $4,517.44 in his trust account.
In April, 1979 the respondent wrote Kathleen, who was now married to a person in the Air Force, concerning the remaining $4,517.44. He told her the Air Force might never try to collect the money and mentioned and discussed the statute of limitations. He also indicated the government might try to collect the money some time in the future, but he told them they had three alternatives: "cut a check to the Air Force," leave the money in his (Burns) trust account, or distribute the money. Respondent testified that he had been told by his client that the Air Force had been paid. This is disputed.
*489 It was agreed to distribute the money. The respondent did this after first taking one-third of the $4,517.44 for his fees. When asked at the hearing how he determined this amount, respondent stated:
Q Now, the first notation on there appears to be the draft amount of $24,517.44.
A Yes, sir.
Q All right. And you write a check on your trust account to the Fowlers [Kathleen and her husband], "2/3 settlement, $11,800." Is that correct?
A Yes, sir.
Q Okay. And then you wrote one to yourself. And this is all happening on November 3; am I right?
A That's correct.
Q You write it for $8,200; is that correct?
A That's correct.
Q And $8,200 is one-third, give or take a few dollars, of $24,517; is that right?
A Yes, sir.
Q All right. And then we get into 1979, and there seems to be some money left over; right? $4,517.44 is left over?
A That's correct.
Q All right. On April 9 you write a check to the Fowlers for $3,017.44; is that correct?
A That's correct.
Q And you write a check to yourself for $1,500; is that correct?
A That's correct.
Q Why did you write yourself a check? You already had your one-third of $24,000.
A Well, my thinking was that if in fact the Air Force had been paid, that in fact we had found an additional $4,500 for Kathy and Ernie.
Q You had already taken your bit out of it, you had already taken one-third of $24,000 and you put $8,200 into your pocket.
A That's correct.
Q And they should have gotten the balance, shouldn't they have, if you want to go by that theory?
Why did you take a third again?
A Because we found an additional $4,517.
In May, 1979 the Air Force wrote to the respondent inquiring about the $4,517.44. In April, 1980 the respondent wrote Kathleen's mother in an attempt to locate Kathleen. In March, 1981 respondent wrote Kathleen informing her that the Air Force wanted the $4,517.44. The respondent stated:
I am writing in regards to the above captioned matter and your medical expenses at the Luke Air Force Base, Arizona. I have received numerous calls now regarding the sum of $4,517.44 which is due and owing Luke for your medical expenses concerning the J.C. [Penney's] accident. They have stated that they are going to turn this matter over to the United States Attorneys Office for collection. They do have the possibility of the Statute of Limitation running out, but if they decide to file their lawsuit against you, they may be able to bring charges of fraud or possible theft charges, etc., against you.
The client responded to this letter in May, 1981, after obtaining legal advice in Germany (where her husband was stationed with the Air Force). The respondent did not reply. It was not until April, 1982, after this matter was brought to the attention of the state bar, that respondent offered the Air Force his third of the $4,517.44. The Air Force refused all but complete payment.
The Local Administrative Committee made the following findings of fact and conclusions of law:
(1) Thomas B. Burns, Jr. had been retained in October 1976, by Mrs. Esther Jett to represent her daughter, Kathleen Jett in a personal injury action against J.C. Penney Co. Mr. Burns agreed to represent Kathleen [Jett] on a contingency basis of one-third of the total amount recovered, plus costs.

*490 (2) At the time of the accident, Kathleen Jett was a 16 year old Air Force dependent. Her medical treatment was provided to her by the U.S. Air Force, which by Federal statute was entitled to reimbursement therefor from J.C. Penney Co.
* * * * * *
(5) On behalf of his client, Mr. Burns settled the personal injury claim with J.C. Penney's insurance carrier, Liberty Mutual Insurance Company, for $20,000, plus $4,517.44 for the medical lien of the U.S. Air Force.
(6) On or about November 3, 1978, Mr. Burns advised his client and her husband to sign a "Release and Settlement of Claim" for $24,517.44, of which $4,517.44 appeared as a lien in favor of the U.S. Air Force  Claims.
(7) On or about November 3, 1978, Mr. Burns and his clients agreed that Mr. Burns would retain possession of the $4,517.44 and would not distribute any portion of it to his clients at that time.
(8) On November 3, 1978, Mr. Burns deposited the draft from Liberty Mutual in the amount of $24,517.44 in his trust account without obtaining the endorsement of the U.S. Air Force  Claims, one of the payees on the draft. Also on November 3, 1978, he wrote two checks against his trust account, one to the [client] for $11,800.00 and one to himself for the balance, $8,200.00.
* * * * * *
(10) Between November 3, 1978, and April 9, 1979, Mr. Burns knowingly and intentionally failed to take any affirmative action to determine the proper disposition of the $4,517.44, knowing full well that the U.S. Air Force had made claim for medical expenses and that he had received the $4,517.44 either to be forwarded to the U.S. Air Force or had received it in error.
(11) On April 9, 1979, after he had not received any inquiries concerning the $4,517.44 for five months, Mr. Burns advised the [client] that [she] could either have him continue to hold the money to see if there would be any inquiries, or they could divide the money and hold it for two years. The [client] decided [she] should divide the money immediately and on April 9, 1979, Mr. Burns took approximately one-third of the $4,517.44 and gave [the client] the remainder.
* * * * * *
(14) Between January, 1981, and the spring months of 1982, the U.S. Air Force made numerous attempts to contact Mr. Burns concerning the recovery of the $4,517.44; however Mr. Burns intentionally avoided responding to the Air Force inquiries.
(15) On May 15, 1981, the [client] wrote to Mr. Burns and requested that [the] records concerning this matter be returned but Mr. Burns failed to do so.
The Committee concluded that:
(1) Thomas B. Burns, Jr. violated Disciplinary Rule 1-102(A)(6) in that he knowingly and intentionally failed to take affirmative action to discover the proper disposition of the $4,517.44 which was paid to him and his clients, such conduct adversely reflecting on his fitness to practice law.
* * * * * *
(3) Mr. Burns violated Disciplinary Rule 2-106(A) in that he collected a clearly excessive fee when he charged his client $1,497.52 more than the agreed upon fee of one-third of their total recovery, plus costs.
(4) Mr. Burns violated Disciplinary Rule 7-102(A)(7) in that he counseled his clients to commit a future crime in violation of ARS [§ 13-1802(A)(4)], theft of misdelivered property, when he knew his clients had no lawful claim to that property.
(6) Mr. Burns did not violate Disciplinary Rule 7-102[A](3) and (5) in that the evidence did not clearly and convincingly show that he made false statements to his clients.
The local committee recommended a nine-month suspension. The disciplinary *491 board recommended the respondent be disbarred. The respondent requested a hearing before the disciplinary board. After consideration of the record and arguments presented at the hearing, the disciplinary board accepted all but one of the findings of the local committee and rejected their conclusion number six. A one-year suspension was recommended.
VIOLATION OF THE CANONS
a. Failure to take affirmative action to discover the proper disposition of the $4,517.44.
DR 1-102(A)(6) reads:
DR 1-102 Misconduct
(A) A lawyer shall not:
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
Failure to properly inform himself of the law of a particular case before advising a client adversely reflects on an attorney's fitness to practice the law. At best it appears that the respondent did not take the proper action to inform himself of all the law regarding the legal status of the amount of the Air Force lien. By statute the Air Force had a lien for the amount recovered as and for the value of medical services rendered to his client. He was notified of this by the staff judge advocate and given the United States statutory citation. It would have been easy to research the law in the case before advising his client and himself of the consequences of not turning the money over to the Air Force. Respondent's failure in this regard reflected adversely on his fitness to practice law, and was a violation of DR 1-102(A)(6).
b. Excessive fee.
DR 2-106 reads:
DR 2-106 Fees for Legal Services
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
Respondent had agreed with his clients to take a one-third fee, plus costs, for handling the matter. When the amount of $24,517.44 was paid by the insurance company, respondent, after deducting costs, took one-third of that amount, or $8,202.48. However, since the amount of $4,517.44 was held in respondent's trust account pending disposition of that amount, the client received only $11,797.52 instead of $16,404.96, which would have represented two-thirds of $24,517.44. Later when it was decided to dispense the amount of $4,517.44, respondent took another one-third out of the $4,517.44. DR 2-106 applies not only to excessive fees regardless of agreement, but to situations such as this when the fee charged is in excess of the fee agreed to by the parties. We believe respondent violated DR 2-106.
c. Violation of A.R.S. § 13-1802(A)(4).
The board found that the respondent counseled his clients to commit a future crime of theft, in violation of A.R.S. § 13-1802(A)(4), theft of misdelivered property, when he knew or should have known that the client had no lawful claim to the property. DR 7-102(A)(7) reads:
DR-7-102 Representing a Client Within the Bounds of the Law
(A) In his representation of a client, a lawyer shall not:
* * * * * *
(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.
It is apparent that this money belonged to the Air Force for medical services rendered to the client. Whatever respondent's knowledge of the law at the time he received the check from the insurance company, by the time he disbursed the funds in his trust account he had to know that what he was advising was improper. By urging the clients to take the money and not pay the Air Force, the respondent encouraged his client to commit fraud on the United States government. We believe respondent violated DR 7-102(A)(7).
*492 d. False statement to clients.
Finding number six by the local administrative committee that the respondent did not make false statements to his clients was rejected by the disciplinary board. By doing so the board held, in effect, that the respondent did make false statements to his client.
DR 7-102 reads:
(A) In his representation of a client a lawyer shall not:
* * * * * *
(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.
* * * * * *
(5) Knowingly make a false statement of law or fact.
As noted above it appears from the settlement agreement with the insurance company and the check given in the settlement that the Air Force claims were to be paid out of the $24,517.44. One letter from respondent to his client reads in part:
This is to inform you that I have never paid the hospital bill of $4,517.44 as yet and the sums are still in my trust account. No one has contacted me regarding payment. Since this bill is with the federal government, I have never actually promised them payment, have you? Would you prefer I wait awhile longer on this matter to see if perhaps the bill would either reach us or get lost in the shuffle? I really am not certain as to the statute of limitation on the U.S. Government liens, but to open accounts in Arizona it is three (3) years and on written contracts it is six (6) years.
There is a chance the Air Force may never try to collect this sum for the medical expenses. If you wish I could send you 2/3 rds of the total and keep 1/3 rd for attorney fees and close my file out. But please realize that the government could go after you for the total sum due sometime in the future.
Failure to pay the Air Force claim, followed by suggestions to his clients to wait and see if the Air Force pressed for the money admittedly owed, in effect encouraged respondent's client to defraud the Air Force. Respondent was advising his client to try and "get away" with keeping the money. This conduct by respondent was, as we have noted above, a violation of DR 7-102(A)(7), which prohibits a lawyer from assisting "his client in conduct that the lawyer knows to be illegal or fraudulent." The record does not, however, show by clear and convincing evidence that the respondent failed to advise his client of the consequences of not remitting the amount to the Air Force. In fact, the evidence indicates that respondent knew by that time that he was advising his client to commit an illegal or fraudulent act. The evidence is not clear and convincing that respondent violated Rules 7-102(A)(3) and (5) and 7-102(A)(7) by knowingly misinforming the client of the consequences of keeping the funds. The finding by the disciplinary board rejecting conclusion number six is reversed, and the finding of the local administrative committee is affirmed as to conclusion number six.
SANCTION
We have previously stated:
Evidence of professional misconduct must be clear and convincing and need not be beyond a reasonable doubt. While it is the duty of the Supreme Court to make an independent determination of the facts from the record, we will nevertheless give serious consideration to the recommendations of the Board of Governors of the State Bar of Arizona as well as the findings and recommendations of the local administrative committee. * * While we cannot avoid the responsibility of determining ultimate facts in disciplinary proceedings, the court is still restricted to the cold record before it and the local administrative committee who heard the witnesses testify and observed their demeanor, as well as the Board of Governors who heard the respondent and were able to question him, are in a superior position to determine the credibility *493 of those witnesses who appeared in person.
Matter of Lurie, 113 Ariz. 95, 95-96, 546 P.2d 1126, 1126-27 (1976) (citations omitted).
The local administrative committee recommended a nine-month suspension, the board a one-year suspension. We note that charging excessive fees brought a two-month suspension in Matter of Mercer, 126 Ariz. 274, 278, 614 P.2d 816, 820 (1980). Misappropriation of funds of a closed corporation brought a six-month suspension in Matter of Lurie, supra, at 95, 98, 546 P.2d at 1126, 1129. In the instant case there has been misappropriation of funds due a third party, an excessive fee, advice to commit illegal or fraudulent acts, and conduct adversely reflecting on respondent's fitness to practice law. We also note that as to the excessive fee, the respondent, in his testimony before the disciplinary committee, did not appear to appreciate or understand the nature or the magnitude of his ethical violation. However, we further note that the respondent has served his community through many years of public service activities, as well as two years of active duty and four years in the reserves with the United States Army Infantry, attaining the rank of Captain. There is no indication of other professional misconduct, nor does it appear that the respondent is likely to repeat his past misconduct. The purpose of professional discipline is to protect the public and not to punish the attorney. Lurie, supra, at 95, 546 P.2d at 1126. Under the circumstances, we agree with the bar disciplinary board that a one-year suspension is a proper sanction in this case.
It is therefore ordered that respondent, Thomas B. Burns, Jr., be suspended from the practice of law in this state for one year commencing upon the issuance of the mandate in this case. It is further ordered that respondent pay costs in the sum of $2,158.65 pursuant to Rule 37(g), Rules of the Supreme Court, 17A A.R.S. Respondent is further directed to comply with the provisions of Rule 37(h), Rules of the Supreme Court, 17A A.R.S.
HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.